UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
H.L., individually and on behalf of D.L.,

                        Plaintiff,

                -against-                                      15-cv-2451 (LAK)


NEW YORK CITY DEPARTMENT OF EDUCATION,

                        Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

                Appearances:

                              Joel Mandelbaum
                              NEW YORK LEGAL ASSISTANCE GROUP
                              *Attorney for Plaintiff*

                              William B. Scoville, Jr.
                              Lesley Mbaye
                              ZACHARY W. CARTER
                              CORPORATION COUNSEL OF THE CITY OF NEW YORK
                              *Attorneys for Defendant*


LEWIS A. KAPLAN, *District Judge.*

            This action arises from an administrative challenge, pursuant to the Individuals with

Disabilities Education Improvement Act of 2004 ("IDEA"),[1] that seeks tuition reimbursement for

plaintiff's son's private school tuition for the 2011-2012 school year.  In essence, the Impartial

---

[1]     20 U.S.C. § 1400 *et seq.*

2

Hearing Officer ("IHO") ruled for plaintiff.  The State Review Officer ("SRO") reached the opposite conclusion.  Plaintiff then brought this action. The matter is before the Court on cross-motions for summary judgment and, in particular, defendant's objections to the report and recommendation dated June 30, 2016 (the "R&R").  The R&R recommended that plaintiff's motion be granted and that defendant's be denied.

*Background*

At the start of the 2011-2012 school year, D.L. was 11 years old.[2]  D.L. had been diagnosed with autism spectrum disorder, and the New York City Department of Education ("DOE") had classified him as a student with autism.[3]  He was severely delayed academically, cognitively, and developmentally.[4]

On April 13, 2011, a DOE Committee on Special Education ("CSE") held a meeting to develop D.L.'s Individualized Education Program ("IEP") for 2011-2012.[5]  The CSE was comprised of H.L., D.L.'s Rebecca School teacher from 2009-2011, a Rebecca School social worker, a DOE school psychologist, a DOE district representative, and a parent member.[6]  The IEP assigned D.L. to a class of six students, one teacher, and a classroom paraprofessional in a

---

[2]

Compl. [DI 1] ¶ 27.

[3]

*Id.* ¶¶ 28, 48.

[4]

*Id.* ¶ 29.

[5]

*Id.* ¶ 47.

[6]

*Id.*

3

specialized school for a 12-month school year.[7]  It mandated the following related services as part of D.L.'s school week: two 40-minute individual counseling sessions, four 40-minute individual occupational therapy sessions, one 40-minute occupational therapy session in a group of three students, and five 40-minute individual speech therapy sessions.[8]  The IEP assigned D.L. a full-time one-on-one transitional paraprofessional.  It noted specifically that D.L. "benefits from . . . having [the] classroom teacher have direct contact with [the] speech therapist for consultation."[9]

A Final Notice of Recommendation ("FNR") assigned D.L. to P.S. 138 at J.H.S. 117 ("138 @ 117"), located at 240 East 109th Street in Manhattan.[10]  The FNR, however, directed H.L. to visit a different P.S. 138 location because the site at J.H.S. 117 was under construction at the time.[11]

On June 23, 2011, H.L. met with P.S. 138 assistant principal Michael Gaffney.[12] According to H.L., Gaffney told him that 138 @ 117 would not be able to meet D.L.'s related services mandates because of the high demand at the school for those services.[13]  According to Gaffney, he told H.L. that "given the amount of therapies that are on [D.L.'s] IEP it is possible that

---

[7]  *Id.* ¶ 53.

[8]  *Id.* ¶ 54.

[9]  DOE Ex. 3 at 3-4.

[10]  DI 1 ¶ 61.

[11]  DI 18, at 7.

[12]  *Id.*

[13]  *Id.* at 8.

we would need to reach out either to contract therapists or to provide RSA authorizations to receive those therapies outside of the classroom."[14]   After touring the alternative P.S. 138 site, H.L. determined that the site lacked the facilities and equipment required to meet D.L.'s needs.[15] Accordingly, H.L. notified DOE that it had failed to offer D.L. an appropriate placement for 2011-2012 and that he intended to enroll D.L. at the Rebecca School.[16]

### The Administrative Decisions and the R&R

On September 20, 2013, H.L. filed a Due Process Complaint ("DPC") alleging that DOE failed to comply with the IDEA's requirement to provide D.L. with a FAPE for 2011-2012.[17] In sum and substance, the DPC claimed that (1) DOE's proposed placement could not implement D.L.'s IEP and (2) H.L. was deprived of meaningful participation in developing D.L.'s educational program for 2011-2012.[18]   The DPC contended also that the Rebecca School was an appropriate placement for D.L. and the equities supported H.L.'s claim.

### The Impartial Hearing

After an initial conference in December 2012, the IHO convened an impartial hearing

---

[14]    IHO Hr'g Tr. 143:8-15; DI 22, at 4.

[15]    DI 18, at 8.

[16]    *Id.*; DI 22, at 4.

[17]    DI 18, at 8.

[18]    DI 18, at 9; DI 22, at 4-5.

that took place on five non-consecutive dates between January 2, 2013, and March 5, 2013.[19]  Two witnesses testified for DOE: the DOE psychologist who attended the CSE meeting and Gaffney. H.L. called seven witnesses: the Rebecca School's program director, one of D.L.'s occupational therapists from the Rebecca School, D.L.'s classroom teacher from the Rebecca School, a classroom supervisor at the Rebecca School, two of D.L.'s speech and language pathologists, the supervisor of the Rebecca School's speech and language therapy department, and H.L.

The IHO issued her decision on April 11, 2013.  She found that DOE did not meet its burden of proving that the program it offered was appropriate.  She further found that the Rebecca School was an appropriate placement and that the equitable considerations favored H.L.[20]

*The SRO's Decision*

DOE appealed to the SRO on May 16, 2013.  On December 12, 2014, the SRO issued a decision reversing the IHO.  The SRO concluded, relying on *R.E. v. New York City Department of Education*,[21] that H.L.'s claims regarding implementation of D.L.'s IEP were too "speculative" to maintain because H.L. unilaterally placed D.L. prior to implementation of his IEP.  Although it was not necessary for her to do so, the SRO reached the merits of H.L.'s "speculative claims" in the alternative, holding that "the IHO erred in finding that the district failed to offer the student a FAPE . . . because the assigned public school could not provide the student with all of the related

---

[19]     DI 18, at 9.

[20]     DI 18, at 10.

[21]     694 F.3d 167 (2d Cir. 2012).

services in the . . . IEP."[22]  Having determined that "the necessary inquiry [wa]s at an end," the SRO

declined to address whether the Rebecca School was an appropriate placement or whether equitable

considerations supported H.L.'s request for relief.[23]

*Subsequent Developments*

About seven months after the SRO issued her decision, the Second Circuit decided

*M.O. v. New York City Department of Education*,[24] in which it clarified its prior holding in *R.E.*  It

began by noting that courts in this Circuit had been interpreting *R.E.* to hold that "a child must

physically attend a proposed placement school before challenging that school's ability to implement

their IEP."[25]  But because "*R.E.* [did] not foreclose *all* prospective challenges to a child's proposed

placement school," the Circuit found it necessary to clear matters up.[26]  It went on to explain that

> "[w]hile it is speculative to conclude that a school with the capacity to implement a
> given student's IEP will simply fail to adhere to that plan's mandates, it is not
> speculative to find that an IEP cannot be implemented at a proposed school that lacks
> the services required by the IEP.  For example, it is not speculative to conclude that
> an IEP recommending a seafood-free environment, for a child with a life threatening
> seafood allergy, could not be implemented at a proposed school that was not seafood
> free.  Nor is it speculative to conclude that an IEP recommending one-on-one
> occupational therapy, outside of the classroom, could not be implemented at a school

---

[22]

SRO Op. at 7-9.

[23]

SRO Op. at 9.

[24]

793 F.3d 236 (2d Cir. 2015).

[25]

*Id.* at 243.

[26]

*Id.* at 244.

that provided only in-class occupational therapy in a group setting."[27]

*The R&R*

H.L. commenced this action on March 31, 2015.  On February 8, 2016, H.L. moved, and DOE cross-moved, for summary judgment.  The magistrate judge issued a report recommending that summary judgment be entered in H.L.'s favor and that DOE be directed to pay the cost of D.L.'s tuition at the Rebecca School for the 2011-2012 school year.  DOE timely filed objections to the R&R.

*Discussion*

"[T]he role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed."[28] As the Supreme Court has cautioned, such review "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review."[29]  Indeed, courts should be "mindful that we lack the specialized knowledge and experience necessary to resolve" these questions.[30]  Accordingly, due weight must be given to the state proceedings.[31]

New York law provides for two levels of administrative review in this area.  The

---

[27]
    *Id.* (citations omitted).

[28]
    *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112-13 (2d Cir. 2007).

[29]
    *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982).

[30]
    *R.E.*, 694 F.3d at 189 (quoting *Gagliardo*, 489 F.3d at 113).

[31]
    *Id.*

8

parties first present their claims to an IHO, who conducts an impartial hearing to determine the matter.[32]  Either party thereafter may appeal the decision to an SRO, who is empowered to affirm or modify the IHO's order "to the extent . . . [he or she] deems necessary."[33]  Courts generally "'defer to the final decision of the state authorities,' even where 'the reviewing authority disagrees with the hearing officer.'"[34]

Here, the SRO issued her decision without the benefit of the Second Circuit's subsequent clarification of *R.E.*  Given her conclusion that *R.E.* foreclosed H.L.'s prospective challenge to D.L.'s proposed placement—a conclusion that proved mistaken when *M.O.* came down later—she did not elaborate on her alternative holding regarding H.L.'s implementation claims. Similarly, she declined to address whether the Rebecca School was an appropriate placement or whether equitable considerations supported H.L.'s request for relief on the ground that her determination that DOE offered D.L. a FAPE rendered doing so unnecessary.[35]  Thus, the Court for various reasons has been deprived of the SRO's guidance on several questions of educational policy implicated by this action.

Although the Court unquestionably has the ability to decide this case on the merits, it  "would benefit from an application of the SRO's 'specialized knowledge and experience' to the

---

[32]

N.Y. Educ. Law § 4404(1).

[33]

*Id.* § 4404(2).

[34]

*A.C. ex rel. M.C. v. Bd. of Educ. of Chappaqua Cent. Sch. Dist.*, 553 F.3d 165, 171 (2d Cir. 2009) (quoting *Karl ex rel. Karl v. Bd. of Educ. of Geneseo Cent. Sch. Dist.*, 736 F.2d 873, 877 (2d Cir. 1984)).

[35]

SRO Op. at 9.

9

issues in this case."[36]  In these circumstances, then, the Court finds that remanding the case to the SRO for her full consideration of H.L.'s claims in light of *M.O.* is appropriate.  Indeed, the purposes of the IDEA would be served better by affording the SRO—"who is 'uniquely well suited to review the content and implementation'" of D.L.'s IEP—the opportunity to clarify her decision and to provide guidance on H.L.'s unaddressed claims.[37]  While it is true that the Court may consider and defer to the IHO's decision in these circumstances, New York law specifically provides for a two-level system of administrative review.[38]  To substitute the IHO's judgment for the SRO's would, in the Court's view, unnecessarily disturb that system.

*Conclusion*

For the foregoing reasons, the parties' cross-motions for summary judgment [DI 17, DI 19] are denied, and the case is remanded to the SRO.

SO ORDERED.

Dated:        December 22, 2016

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[36]

*N.Y.C. Dep't of Educ. v. V.S.*, No. 10-cv-5120 (JG), 2011 WL 3273922, at *10 (E.D.N.Y. July 29, 2011) (citation omitted); *see also Gagliardo v. Arlington Cent. Sch. Dist.*, 373 F. Supp. 2d 460, 461 (S.D.N.Y. 2005) (remanding case and stating that "I would much prefer that the State Education Department opine on this issue, and the parties would be better served by having a[n] SRO's ruling on the subject").

[37]

*D.N. v. N.Y.C. Dep't of Educ.*, 905 F. Supp. 2d 582, 589 (S.D.N.Y. 2012) (quoting *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 487 (2d Cir. 2002)).

[38]

*See* N.Y. Educ. Law § 4404.