UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------X
                                          :
H.L., individually and on behalf of D.L., a  :
child with a disability,                   :
                                          :
                          Plaintiff,       :        15 Civ. 2451 (KPF)
                                          :
                v.                         :        OPINION AND ORDER
                                          :
NEW YORK CITY DEPARTMENT OF                :
EDUCATION,                                 :
                                          :
                          Defendant.       :
                                          :
------------------------------------------------------X
```

KATHERINE POLK FAILLA, District Judge:

Plaintiff H.L., individually and on behalf of his special needs son, D.L.,

filed suit under the Individuals with Disabilities Education Act (the "IDEA,"

formerly known as the Individuals with Disabilities Act), 20 U.S.C. §§ 1400-

1482, against Defendant New York City Department of Education ("Defendant"

or "DOE").[1] Plaintiff brings this action (i) to recover costs he incurred in

sending D.L. to a private school for the 2011-2012 school year, and (ii) to seek

review of the September 2017 decision by the State Review Officer (the "SRO")

that effectively denied Plaintiff the ability to recover those costs from DOE.

---

[1]     The Court does not expressly name the child or the parents because "in an action
        commenced by a parent or guardian on behalf of a minor child pursuant to the IDEA,
        the Plaintiff should be permitted to proceed, as a matter of course, using initials in
        place of full names in public filings with the Court." *P.M.* v. *Evans-Brant Cent. Sch.
        Dist.*, No. 08 Civ. 168A (RJA), 2008 WL 4379490, at *3 (W.D.N.Y. Sept. 22, 2008); *see
        also* Fed. R. Civ. P. 5.2(a); 20 U.S.C. § 1417(c).

The parties have cross-moved for summary judgment.  For the reasons set forth below, Plaintiff's motion is granted in part, and Defendant's motion is denied.

## BACKGROUND[2]

As happens frequently in IDEA cases, this case is resolved short of trial, as a result of competing summary judgment motions.  Although the Court's inquiry in IDEA cases is generally fact-intensive, two prior decisions provide a thorough factual and procedural history of this case:  Magistrate Judge Kevin Nathaniel Fox's June 30, 2016 Report and Recommendation (Report 1-10), and District Judge Lewis A. Kaplan's December 22, 2016 Opinion, *see H.L.* v. *N.Y.C. Dep't of Educ.*, No. 15 Civ. 2451 (LAK), 2016 WL 7429446, at *1-3 (S.D.N.Y. Dec. 22, 2016).  As a result, this Court will focus on the portions of the record that are most relevant here: the conversations between H.L. and a DOE representative regarding school placement, and the procedural developments following Judge Kaplan's remand to the SRO.

## A.    The Legal Framework

The IDEA "requires states to provide disabled children with a 'free appropriate public education'" (a "FAPE").  *Florence Cnty. Sch. Dist. Four* v.

---

[2]    The facts are drawn from the parties' submissions in connection with their respective summary judgment motions, as well as Magistrate Judge Fox's Report and Recommendation ("Report" (Dkt. #17)), the IHO Decision ("IHO Dec."), the September 6, 2017 decision of the SRO ("SRO 2017 Dec."), and the transcript ("Tr.") of the hearing before the IHO.  Because the latter three documents were filed under seal, the Court references, where possible, publicly-filed materials that discuss their contents.  In addition, for ease of reference, Plaintiff's opening brief is referred to as "Pl. Br." (Dkt. #47); Defendant's opening brief as "Def. Br." (Dkt. #44); Plaintiff's opposition and reply as "Pl. Opp." (Dkt. #49); and Defendant's reply and opposition as "Def. Opp." (Dkt. #50).

*Carter*, 510 U.S. 7, 9 (1993) (citation omitted); *see R.E.* v. *N.Y.C. Dep't of Educ.*, 694 F.3d 167, 174-75 (2d Cir. 2012). In accordance with this mandate, school districts are required to create an individualized education program ("IEP") for each qualifying child in order to ensure that the child receives a FAPE. *See R.E.*, 694 F.3d at 175.

"The IEP, the result of collaborations between parents, educators, and representatives of the school district, sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *T.Y.* v. *N.Y.C. Dep't of Educ.*, 584 F.3d 412, 415 (2d Cir. 2009) (quoting *Lillbask ex rel. Mauclaire* v. *Conn. Dep't of Educ.*, 397 F.3d 77, 81 (2d Cir. 2005)); *see also* 20 U.S.C. § 1414(d)(1)(A). At the cornerstone of the IDEA is the requirement that the IEP be "reasonably calculated to enable the child to receive educational benefits." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist.* v. *Rowley*, 458 U.S. 176, 207 (1982); *see also Gagliardo* v. *Arlington Cent. Sch. Dist.*, 489 F.3d 105, 107 (2d Cir. 2007) (citing *Walczak* v. *Fla. Union Free Sch. Dist.*, 142 F.3d 119, 122 (2d Cir. 1998)).

In New York State, each school district has a Committee on Special Education ("CSE") that is responsible for developing IEPs for qualifying students within that district. *Gagliardo*, 489 F.3d at 107. A CSE is "comprised of members appointed by the local school district's board of education; it must include, among others, the student's parent(s), a regular or special education

3

teacher, a school board representative, [and] a parent representative," and it may include others. *R.E.*, 694 F.3d at 175; N.Y. Educ. Law § 4402(1)(b)(1)(a).[3] The CSE is responsible for examining the student's level of achievement and specific needs in order to determine an appropriate educational program. *R.E.*, 694 F.3d at 175.

If a parent believes that his or her child's IEP fails to comply with the IDEA, the parent may seek relief by filing a due process complaint with the appropriate state agency. 20 U.S.C. § 1415(b)(6). Upon the filing of a due process complaint, federal law mandates that the parent be provided with an impartial due process hearing before an Impartial Hearing Officer ("IHO"). *Id.* § 1415(f). New York law, in turn, requires a parent to pursue his or her claim first before an IHO; once the IHO renders a decision, either party may appeal the decision to the SRO. N.Y. Educ. Law § 4404(1), (2). After the SRO completes his or her review of the IHO's decision, either party may file an action in state or federal court seeking review of the SRO's decision. 20 U.S.C. § 1415(i)(2)(A).

**B.    Discussions Regarding D.L.'s Placement for the 2011-2012 Academic Year**

On June 15, 2011, after the CSE had met to develop D.L.'s IEP for the 2011-2012 academic year,[4] DOE sent Plaintiff a Final Notice of

---

[3]    A "parent representative," also referred to as a "parent member," is a parent of another disabled student. This parent attends the CSE meeting to provide information and support to the parent of the student for whom the CSE meeting is being held. *See* N.Y. Educ. Law § 4402(a)(viii).

[4]    The school year was twelve months long, beginning in July 2011 and running through June 2012. (Def. Br. 3-4).

Recommendation ("FNR") assigning D.L. to "75m 138 @ J117" (also known as "P.S. 138 at 117"), with a listed address at "144-176 East 128th Street, NY 10035." (Pl. Br. 3). In point of fact, P.S. 138 is a specialized school district that only enrolls student with disabilities, and it has nine separate physical locations. (Def. Br. 4). D.L.'s assigned school, P.S. 138 at 117, is not located at the address on the FNR, and it was under construction or renovation at the time the FNR was issued. (Pl. Br. 3). The address listed in the FNR was the location of P.S. 138's main site, known as P.S. 138 at 30. (*Id.*).

On or about June 23, 2011, H.L. met with Assistant Principal Michael Gaffney at P.S. 138 at 30. (Pl. Br. 3). Plaintiff and Defendant provide conflicting accounts of that meeting, but are in agreement that both sides understood that DOE planned to implement D.L.'s IEP so that (i) D.L. would begin in September 2011 at P.S. 138 at 117 and (ii) D.L. would attend a different facility for July and August 2011, the first two months of the 2011-2012 school year. (*See, e.g.,* Tr. 582:23-583:24).[5]

---

[5]    In the hearing on the due process complaint that he filed (the "Due Process Complaint"), H.L. testified generally about the length of the two placements. He recalled Mr. Gaffney advising him that D.L. would be placed at P.S. 138 at 30 "for the summer, until the other school [P.S. 138 at 117] opened." (Tr. 583:14-15; *see also id.* at 583:15-18 ("And [D.L.] would be spending the summer, or whatever time period it is leading up to the opening of [P.S. 138 at 117.]"); *id.* at 583:23-24 (recalling that Mr. Gaffney advised him that P.S. 138 at 117 "should be [open] sometime in the fall")). In the briefing he submitted in connection with the instant cross-motions, H.L. specifically delimited D.L.'s summer placement as a two-month period spanning July and August 2011. (*See, e.g.,* Pl. Br. 9 n.2 (alleging DOE obfuscation concerning "the school D.L. would be attending in July and August"), 13 ("However, Mr. Gaffney knowingly withheld from Parent that D.L. would attend another school in July and August[.]"); *see also* Pl. Br. 9 (alleging "purposeful[] withholding [of] information from Parent concerning what school D.L. would attend during the 2-month summer school session"); *id.* at 10 n.3 ("If, as in D.L.'s case, the DOE has determined that a child needed a 12-month school year to prevent regression, the same IDEA requirements apply to a two-month program as would apply to a ten-month program."); 16 (distinguishing "the 2-month summer school

Plaintiff alleges that Mr. Gaffney told him that because P.S. 138 at 117 was under construction, D.L. would attend P.S. 138 at 30 (the situs of their meeting) for July and August, before beginning at P.S. 138 at 117 in the fall. (Pl. Br. 3; *see also* Tr. 121:14-122:8, 583:12-24). Concerned about the facilities there, H.L. enrolled D.L. the very next day at the Rebecca School, notifying DOE on June 28, 2011. (Pl. Br. 4). Thereafter, in September 2011, H.L. filed a Due Process Complaint that alleged deficiencies at P.S. 138 at 30 and P.S. 138 at 117, which deficiencies, he claimed, resulted in the denial of a FAPE to D.L. (Pl. Br. 4).[6]

More than a year later, at the impartial hearing on his Due Process Complaint, H.L. discovered that DOE had never intended D.L. to attend P.S. 138 at 30 for July and August. (Pl. Br. 13). Instead, DOE intended to assign D.L. to one of three other middle schools in the P.S. 138 system for those two months, before starting D.L. at P.S. 138 at 117 in the fall. (Def. Br. 4). The parties dispute whether Mr. Gaffney intentionally withheld this information regarding D.L.'s summer placement from H.L. at their June 23, 2011 meeting. Plaintiff argues that Mr. Gaffney told H.L. that D.L. would attend P.S. 138 at 30 for the summer program, "while knowing that that was not the case." (Pl. Opp. 3). Defendant acknowledges that Mr. Gaffney did not

---

program and the 10-month program"); Pl. Reply 2 n.2 (same)). In this Opinion, the Court has adopted the school year and the placements put forward by the parties — namely, a twelve-month school year comprising a two-month placement for July and August 2011 at one of three middle school locations in the P.S. 138 system and a ten-month placement from September 2011 until June 2012 at P.S. 138 at 117.

[6] Because the claimed deficiencies listed in Plaintiff's Due Process Complaint are not implicated by the instant cross-motions, the Court does not address them.

make H.L. aware of D.L.'s specific summer placement, or even the three alternatives under consideration, during their meeting, but denies that the assistant principal intentionally misled H.L. (Def. Opp. 3-4). Instead, Defendant argues, Mr. Gaffney did not discuss the summer placement because H.L. had not yet signed the FNR. (Def. Br. 4 ("Once a parent accepted the DOE's placement offer at [P.S.] 138, ... [Mr. Gaffney, or other school administrators] would consult with the parent to determine which of the three available middle school sites was the most practical one to provide summer-month services for the child.")). According to Defendant, H.L.'s erroneous belief that D.L. was scheduled to attend P.S. 138 at 30 for the summer months was an "inadvertent misunderstanding." (Def. Opp. 4).

## C.    Procedural History

### 1.    The Administrative Proceedings

As noted, on June 28, 2011, several days after meeting with Mr. Gaffney, Plaintiff rejected the IEP and its proposed placement at P.S. 138 at 130. (Def. Br. 5). H.L. enrolled D.L. at the Rebecca School, and notified DOE of this decision. (Pl. Br. 4). On September 20, 2011, Plaintiff filed the Due Process Complaint, seeking to recover from DOE $94,750, the cost of D.L.'s tuition for the full 2011-2012 year. (Def. Br. 5). In relevant part, Plaintiff alleged that (i) DOE's proposed placements at P.S. 138 could not implement D.L.'s IEP, and (ii) H.L. had been deprived of meaningful participation in developing D.L.'s IEP for the 2011-2012 school year. *See H.L.,* 2016 WL 7429446, at *2.

On April 11, 2013, an Impartial Hearing Officer ("IHO") found that the DOE had denied D.L. a FAPE for the 2011-2012 school year. (Def. Br. 5).[7] During those hearings, H.L. learned for the first time that D.L. would not have attended P.S. 138 at 130 during July and August. (Pl. Br. 5). Instead, as previously discussed, H.L. would have been placed at one of three alternate P.S. 138 schools. (*Id.* at 3-4).

The DOE appealed the decision to the SRO, who reversed the IHO. (Def. Br. 5). Relying on *R.E.* v. *New York City Department of Education*, 694 F.3d 167, 189 (2d Cir. 2012), the SRO held that Plaintiff's claims were impermissibly speculative "because H.L. unilaterally placed D.L. prior to implementation of his IEP." *See H.L.*, 2016 WL 7429446, at *2. Although she was not required to do so, the SRO also reached the merits of H.L.'s "speculative" claims and reversed the IHO's decisions there as well. *See id.*

## 2. Judge Kaplan's Remand to the SRO

On February 31, 2015, having exhausted the required administrative procedures, Plaintiff filed the Complaint in this action. (Dkt. #1). The case was assigned to District Judge Kaplan, who referred it to Magistrate Judge Fox. (Dkt. #3). The parties cross-moved for summary judgment in February and March 2016. (Dkt. #17-25). On June 30, 2016, Magistrate Judge Fox issued his Report, which recommended that summary judgment be entered in H.L.'s

---

[7]     Because the focus of the instant cross-motions is on arguments that were not made to the IHO or the SRO, the Court's discussion of the earlier administrative decisions is brief.

favor and that DOE be directed to pay the cost of D.L.'s tuition at the Rebecca School for the 2011-2012 school year. (Dkt. #27).

In his decision, Judge Fox noted that the SRO had relied on the Second Circuit's decision in *R.E.* to find that Plaintiff's "challenges to the assigned public school site [were] speculative *solely* because H.L. 'never attended the recommended placement.'" (Report 13). Seven months after the SRO made its determination, however, the Second Circuit issued its opinion in *M.O.* v. *New York City Department of Education*, 793 F.3d 236 (2d Cir. 2015), clarifying its prior holding in *R.E.* Prior to *M.O.*, sister courts in this District had interpreted *R.E.* to hold that "a child must physically attend a proposed placement school before challenging that school's ability to implement their IEP." *M.O.*, 793 F.3d at 243. The Second Circuit clarified that *R.E.* did not foreclose all prospective challenges to a child's proposed placement school. *See id.* at 244. In particular, the Court concluded that it was "not speculative" — and thus a permissible challenge for parents — to argue that "an IEP cannot be implemented at a proposed school that lacks the services required by the IEP." *Id.*

Because the SRO had relied on *R.E.* and applied an erroneous legal standard to conclude that H.L.'s challenges were speculative, Judge Fox recommended that H.L.'s motion for summary judgment be granted and DOE's motion be denied. (Report 13-17). Judge Kaplan chose a different approach. On December 22, 2016, Judge Kaplan issued an order remanding the case to

the SRO so that she could reconsider her earlier decision in light of *M.O.* *See H.L.*, 2016 WL 7429446, at *4-5.

### 3. The Second SRO Decision and the Instant Action

On September 6, 2017, the SRO rendered her second decision in the instant action. (SRO 2017 Dec. 14). Once again, the SRO reversed the IHO and found that DOE had provided D.L. with a FAPE for the 2011-2012 school year. (*Id.*).

The SRO's second decision was a thoughtful, 14-page exposition of the evolving case law in this area. *First*, the SRO held that five of Plaintiff's claims were "not permissible challenges to the assigned public school site under *M.O.*" (SRO 2017 Dec. 9). Under *M.O.*, parents may make prospective challenges to the assigned school's capacity to implement the IEP. (*Id.* at 8). It follows then that each prospective challenge must be connected to an IEP mandate and to the assigned school's ability to implement it. (*Id.*). The SRO found that H.L. made several claims that were not linked to an IEP requirement, including claims that

> [i] the building size and number of students at the school would have overwhelmed the student, [ii] the assigned school lacked a sensory gym, [iii] the assigned school only used TEACCH methodology, [iv] the school lacked space to deliver individual related services and the student would be distracted by related service providers sharing space or providing services in a classroom that contained computers, and [v] changing locations from the summer program to a different school in September would have required the student to transition from schools and providers multiple times during a three-month period.

10

(SRO 2017 Dec. 9). Because these claims were either not borne out by the record or not a contravention of the April 2011 IEP, they could not form the basis of any prospective challenge. (*Id.*).

*Next*, the SRO considered those claims by H.L. that were properly brought. (SRO 2017 Dec. 9-14). After a careful review of the record, the SRO concluded that "the district presented sufficient evidence to conclude that the assigned public school site could have implemented the student's IEP during the 2011-2012 school year." (*Id.* at 14).[8] Because the district offered D.L. a FAPE, the SRO reversed the IHO's decision for the second time. (*Id.*).

Six months later, on January 19, 2018, the case was reassigned from Judge Kaplan to this Court. On April 30, 2018, Plaintiff filed a motion for summary judgment, raising new challenges to the SRO's September 2017 decision. (Dkt. #39). On June 28, 2018, Defendant filed its cross-motion for summary judgment. (Dkt. #43). By September 21, 2018, both motions were fully briefed. (Dkt. #39, 40, 43, 44, 47-50).

## DISCUSSION

### A.   The Standard of Review

In IDEA cases, motions for summary judgment "serve as an aid to the court within a statutory scheme whose purpose is to ensure that children with disabilities receive the educational benefits to which they are entitled." *T.Y.*, 584 F.3d at 418. For this reason, motions for summary judgment in IDEA

---

[8]   It appears to the Court that the SRO is speaking about both P.S. 138 at 30, and P.S. 138 at 117, as exemplified by the fact that she cites to claims in the Due Process Complaint regarding both sites.

cases are "an appeal from an administrative determination" that typically "triggers more than an inquiry into possible disputed issues of fact." *Lillbask*, 397 F.3d at 84 n.3 (citations omitted).

The federal court's role in reviewing these state administrative decisions is, however, "circumscribed." *R.E.*, 694 F.3d at 189; *see also T.Y.*, 584 F.3d at 417. A federal court must give "due weight to the state proceedings, mindful that [the court] lack[s] the specialized knowledge and experience necessary to resolve questions of educational policy." *R.E.*, 694 F.3d at 189 (citation and quotation marks omitted). "Keeping in mind this circumscribed role, the district court engages in an independent review of the administrative record and makes a determination based on a preponderance of the evidence." *M.B. ex rel. L.C.* v. *Minisink Valley Cent. Sch. Dist.*, 523 F. App'x 76, 77-78 (2d Cir. 2013) (summary order) (quoting *Gagliardo*, 489 F.3d at 112). Although the court's review of state administrative decisions "requires a more critical appraisal of the agency determination than clear-error review, [it] nevertheless falls well short of complete *de novo* review." *M.H.* v. *N.Y.C. Dep't of Educ.*, 685 F.3d 217, 244 (2d Cir. 2012) (citation omitted). District courts may not "substitute their own notions of sound educational policy for those of the school authorities which they review." *K.Y. ex rel. T.Y.* v. *N.Y.C. Dep't of Educ.*, 584 F.3d 412, 417 (2d Cir. 2009) (citation omitted).

"[C]ourts generally defer to the final decision of the state authorities, even where the reviewing authority disagrees with the hearing officer." *M.H.*, 685 F.3d at 241 (citing *A.C. ex rel. M.C.* v. *Bd. of Educ. of the Chappaqua Cent. Sch.*

*Dist.*, 553 F.3d 165, 171 (2d Cir. 2009)).  Where the IHO and SRO reach competing determinations, courts "must defer to the SRO's decision on matters requiring educational expertise unless it concludes that the decision was inadequately reasoned, in which case a better-reasoned IHO opinion may be considered instead."  *R.E.*, 694 F.3d at 189.

The deference owed to an SRO's decision depends on the quality of that opinion.  *R.E.*, 694 F.3d at 189.  "Deference is particularly appropriate when the state hearing officer's review has been thorough and careful."  *Id.* at 184 (citing *Walczak*, 142 F.3d at 129).  In reviewing the administrative decision, a district court is directed to asses "the factors that normally determine whether any particular judgment is persuasive, for example, whether the decision being reviewed is well-reasoned, and whether it was based on substantially greater familiarly with the evidence and the witnesses than the reviewing court."  *Id.* at 189 (citation and quotation marks omitted).

Judicial review under the IDEA is a "two-part inquiry":

> First, the court asks whether the State complied with the procedures set forth in the Act.  Second, the court asks whether the IEP developed through the Act's procedures is reasonably calculated to enable the child to receive educational benefits.  If an IEP is deficient — either procedurally or substantively — the court then asks whether the private schooling obtained by the parents for the child is appropriate to the child's needs.

*M.H.*, 685 F.3d at 245 (citations omitted).  In assessing this last question, "equitable considerations relating to the reasonableness of the action taken by the parents are relevant."  *Id.*  "This framework is known as the *Burlington-*

*Carter* test." *R.E.*, 694 F.3d at 185 (citing *Sch. Comm. of the Town of Burlington*
v. *Dep't of Educ. of Mass.*, 471 U.S. 359 (1985); *Florence Cnty. Sch. Dist. Four* v.
*Carter*, 510 U.S. 79 (1993)).

## B. Analysis

The Court has reviewed the SRO's decision, which presents a thorough
review of the factual record and the relevant cases and reaches a well-reasoned
conclusion as to Plaintiff's IEP challenges. If Plaintiff had simply maintained
his original claims, the Court would be inclined to uphold the SRO's decision.
Perhaps because of the care with which the decision was presented, Plaintiff
has abandoned his prior claims and does not now challenge the SRO's
substantive findings. (Def. Opp. 14).

Instead, Plaintiff brings two new claims, alleging that DOE committed
one procedural and one substantive violation of the IDEA. (Pl. Br. 9-15; Pl.
Opp. 10). *First*, Plaintiff claims that when DOE failed to notify D.L.'s parents of
his school placement for July and August 2011, it violated the parents' right to
participate in the school selection process. *Second*, Plaintiff argues that DOE
did not offer D.L. *any* placement by the beginning of the 2011-2012 school
year, thereby denying him a FAPE.

A preliminary inquiry concerns the propriety of this Court resolving the
parties' cross-motions on the current record. After all, the SRO has not had
the opportunity to address either of Plaintiff's claims, inasmuch as neither was
raised in the Due Process Complaint or on remand. (Def. Br. 15). That said,
such claims are not automatically foreclosed from review in federal court, *see*

14

*C.F. ex rel. R.F.* v. *N.Y.C. Dep't of Educ.*, 746 F.3d 68, 78 (2d Cir. 2014), and, indeed, Defendant does not argue otherwise. The "IDEA itself contemplates some flexibility" in bringing new claims, *id.*, particularly if those claims are not meant to "sandbag the school district," *R.E.*, 694 F.3d at 187 n.4.

Here, Plaintiff did not raise his procedural claim in the Due Process Complaint because he believed, at the time, that D.L. would be placed for July and August 2011 at P.S. 138 at 30. The Court cannot expect H.L. to have brought claims based on information of which he was not then aware. Under these circumstances, Plaintiff's new claims may be properly considered.

Relatedly, the Court considers whether remand to the SRO is proper at this stage of the litigation. Two factors mitigate against remand. *First*, the Court is well-positioned to address both claims. Plaintiff's procedural claim "does not call upon educational expertise, but instead is a straightforward one of proper procedure which courts are well-equipped to address." *FB* v. *N.Y.C. Dep't of Educ.*, 132 F. Supp. 3d 522, 541 (S.D.N.Y. 2015). Likewise, Plaintiff's substantive claim does not require a fact-intensive SRO inquiry, as evidenced by both parties' limited briefing on the issue. *Second*, a remand would unnecessarily prolong the instant action. More than seven years have passed since the events at issue and "this long-running dispute has been expensive and time-consuming." *Id.* at 541 n.7. Therefore, the Court declines to remand the case and considers the merits of both claims under the *Burlington-Carter* test.

1. **DOE's Procedural Error Resulted in the Partial Denial of a FAPE to D.L. and Rendered the Recommended Summer Placement Legally Inadequate**

Under the first prong of the *Burlington-Carter* test, DOE "bears the burden of proving that its IEP and recommended placement were adequate and appropriate." *Scott ex rel. C.S.* v. *N.Y.C. Dep't of Educ.*, 6 F. Supp. 3d 424, 436 (S.D.N.Y. 2014) (internal citations omitted). At this step, the Court must examine whether the DOE compiled with IDEA procedures, and whether the district's decision was substantively adequate. *Id.* Plaintiff alleges both procedural and substantive violations.

   a. **The Violation of H.L.'s Procedural Right to Gather Timely and Relevant Information About D.L.'s School Placement for July and August 2011 Resulted in a Denial of a FAPE for Those Months**

The initial procedural inquiry "is no mere formality, as adequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP." *T.P. ex rel. S.P.* v. *Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 253-54 (2d Cir. 2009) (internal quotations omitted). At the same time, not every procedural error will render an IEP inadequate. *M.H.*, 685 F.3d at 245. Instead, "[r]elief is warranted only if the alleged procedural inadequacies impeded the child's right to a FAPE, significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a FAPE to the parents' child, or caused a deprivation of educational benefits." *Id.*

Under the IDEA, parents have a procedural right to participate in the decision-making process regarding the "educational placement of their child." 29 U.S.C. § 1414(e). Plaintiff H.L. asserts that because he was not made aware of D.L.'s summer placement, he was denied this right. (Pl. Br. 12-13). Additionally, Plaintiff alleges that this procedural violation resulted in the denial of a FAPE — automatically rendering the entire IEP inadequate — because it significantly impeded H.L.'s opportunity to participate in the decision-making process. (*Id.*). As detailed in remainder of this section, the Court agrees that DOE's reticence amounted to a procedural violation, but that D.L. was denied a FAPE only as to the summer months for which placement information was not provided.

To review, H.L. met with Assistant Principal Gaffney at P.S. 138 at 30 in June 2011. *See H.L.*, 2016 WL 7429446, at *1. The parties agree that at that meeting, Mr. Gaffney failed to inform H.L. that D.L. would be attending one of three alternate P.S. 138 schools for the two-month summer placement. (Pl. Br. 3-4). Instead, H.L. was left with the impression that D.L. would attend P.S. 138 at 130 for that period because the location assigned in his FNR, P.S. 138 at 117, was under construction until the fall. *See H.L.*, 2016 WL 7429446, at *1. The parties dispute whether this information about the summer placement was willfully withheld by DOE; the Court need not resolve that dispute to resolve Plaintiff's claim of procedural error.

Defendants cite *C.F. ex rel. R.F.* v. *New York City Department of Education*, 746 F.3d 68 (2d Cir. 2014), to argue that no procedural violation

occurred.  In that case, the Second Circuit held that DOE's failure to inform parents that their child's school placement would be located at a different site during the summer was not a procedural violation of the IDEA.  At least one court in this District has followed suit.  *See J.C. ex rel. C.C.* v. *N.Y.C. Dep't of Educ.*, No. 13 Civ. 3759 (PGG), 2015 WL 1499389, at *24 (S.D.N.Y. Mar. 31, 2015) ("DOE's alleged failure to notify Plaintiff of P811M at P101M's relocated summer site does not constitute a procedural violation of the IDEA."), *aff'd sub nom. J.C.* v. *N.Y.C. Dep't of Educ.*, 643 F. App'x 31 (2d Cir. 2016) (summary order).

The Second Circuit reasoned that because the IDEA does not give parents the right to select the specific school site, DOE did not violate the statute when it failed to inform them of their child's precise placement.  *See C.F.*, 746 F.3d at 79.  While parents do have a right to participate in the educational placement of their child, the Second Circuit held that the right is cabined "to the general educational program — such as the classes, individualized attention and additional services a child will receive — rather than the bricks and mortar of the specific school."  *Id.* (quoting *T.Y.*, 584 F.3d at 419 (internal quotation omitted)).  In other words, parents have the right to participate in the development of their child's educational program, including the design of the IEP, and "the determination of the *type* of placement."  *Id.*  In contrast, they do not have the right to determine specific school placement, including placement during the summer months.  *Id.*

Defendant relies on *C.F.* and *J.C.* to argue that because H.L. was not entitled to choose a specific school site for D.L.'s summer placement, DOE did not commit a procedural violation of the IDEA when it failed to notify H.L. of the three locations under consideration for that placement. (Def. Opp. 5-6). Of course, both cases pre-date the Second Circuit's decision in *M.O.* More pointedly, Defendant misperceives Plaintiff's argument: Plaintiff does not claim that he had the right to determine the actual school selection, but instead relies on *M.O.* to argue that DOE infringed on his right to participate meaningfully in the school selection process. (Pl. Opp. 6).

*M.O.* made clear that prospective challenges to a child's proposed placement school are not automatically foreclosed. Courts in this District have found that "[i]mplicit in [this] holding is that the child's parents have the right to obtain information on which to form a judgment about the proposed placement." *FB*, 132 F. Supp. 3d at 540; *see also E.P.* v. *N.Y.C. Dep't of Educ.*, No. 15 Civ. 606 (RA), 2016 WL 3443647, at *11 (S.D.N.Y. June 10, 2016) ("While the M.O. court addressed challenges to the substantive adequacy of a placement, implicit in its holding is a recognition of certain procedural rights that are necessary to effectuate those substantive rights.").

In light of *M.O.*, courts have found that parents have the right to obtain timely and relevant information regarding school placement, in order to evaluate whether the IEP can be implemented at the proposed location. *See, e.g.*, *S.Y.* v. *N.Y.C. Dep't of Educ.*, 210 F. Supp. 3d 556, 574 (S.D.N.Y. 2016); *FB*, 132 F. Supp. 3d at 538. Here, H.L. was denied that right. H.L. met with

Mr. Gaffney at P.S. 138 at 30, on June 23, 2011. (Pl. Br. 3). Although the school year was scheduled to begin on July 5, 2011, Mr. Gaffney did not inform H.L. of the three alternative locations where D.L. would have spent his summer placement, but rather allowed H.L. to believe (as evidenced by the Due Process Complaint) that D.L. would have spent that time at P.S. 138 at 30. (Def. Br. 4).

H.L. does not claim that any of the three locations would have been unable to implement the IEP, but does not need to in order to state a procedural violation. Without knowledge of the three potential sites to which D.L. could have been designated for July and August 2011, H.L. was unable to assess each proposed placement and its capacity to implement the IEP. For example, the IEP required that staff members at the assigned school be "trained in PROMPT therapy or trained to use the student's Dynavox." (SRO 2017 Dec. 10). D.L. also needed to assess "whether the provision of certain related services after school or in the home instead of during the school day would have negatively impacted D.L.'s educational progress, [and] whether D.L.'s IEP-mandated paraprofessional would have appropriate training." (Def. Br. 20). In short, because H.L. was deprived of critical information concerning potential placements for D.L. for July and August 2011, H.L. could not assess each location's ability to implement the IEP-mandated provisions.

In addition, because the violation significantly impeded H.L.'s opportunity to participate in the decision-making process for D.L.'s summer placement, the violation constitutes a denial of FAPE for the months of July and August 2011, thereby satisfying the first step of the *Burlington-Carter* test.

20

Because the DOE never informed H.L. of D.L.'s summer placements, actual or potential, H.L. had no opportunity to visit or evaluate the locations under consideration. *See E.B.* v. *N.Y.C. Dep't of Educ.*, No. 15 Civ. 4998 (KBF), 2016 WL 3826284, at *9 (S.D.N.Y. July 12, 2016). Worse than impeding H.L.'s opportunity to participate in selecting a two-month placement for D.L. while awaiting the completion of P.S. 138 at 117, the DOE excluded him from the process altogether.

The Court pauses to address, and reject, Defendant's position that because the IEP mandates were related to staffing and training, H.L. did not need to conduct a physical inspection of H.L.'s placement school in order to assess its capacity to comply with the IEP. (Def. Br. 20). Defendant argues that H.L. "was afforded the opportunity to learn the relevant information when he met in person with [Mr.] Gaffney on June 23, 2011." (*Id.*). The Court finds this argument troubling. During the June 23, 2011 meeting, H.L. was "utterly in the dark" about D.L.'s potential placement for July and August, and completely unaware that D.L. would be placed at one of three sites other than the site where the meeting was taking place. (Pl. Opp. 8). Yet Defendant argues that H.L. should have known to ask Mr. Gaffney the appropriate questions regarding each of those three schools, in order to assess each school's capacity to comply with the IEP. Defendant cannot fail to provide H.L. with the relevant information, and then defeat his claim on the grounds that H.L. did not proactively (if not presciently) elicit that information from it.

By failing to inform H.L. of D.L.'s potential school placements for July and August 2011, DOE violated IDEA procedures. H.L. was unable to obtain timely information regarding these placements, and therefore was denied his right of meaningful participation as to that portion of the IEP. Because that denial impeded the decision-making process, it constitutes a denial of a FAPE for the months of July and August 2011. *See Bettinger* v. *New York City Bd. of Educ.*, No. 06 Civ. 6889 (PAC), 2007 WL 4208560, at *4 n.14 (S.D.N.Y. Nov. 20, 2007). H.L. argues that this procedural violation amounted to a denial of a FAPE for D.L. for the entire year, but it did not. H.L. was able to obtain sufficient information about P.S. 138 at 117 and P.S. 138 at 30; and he was able to bring challenges to both locations, the resolution of which he does not here contest.

### b. The DOE Did Not Substantially Violate the IDEA by Failing to Provide D.L. with a School Placement

Plaintiff also claims a substantive violation of the IDEA. (Pl. Opp. 10). He argues that because Mr. Gaffney could not definitively state at which of the three summer-placement locations D.L. would have been placed had he shown up on the first day of school, DOE "failed to offer D.L. *any* placement by the time that his 2011-2012 school year began in July." (Pl. Br. 14-15 (emphasis in original)). It follows, Plaintiff alleges, that the IEP was substantively inadequate, and DOE deprived D.L. of a FAPE. (*Id.* at 15).

In their cursory briefing of this issue, both parties cite cases that do not aid the Court's analysis. Once again, Defendant relies on *C.F.* and *J.C.* — this time, to argue that DOE did not *substantively* violate the IDEA. (*See* Def. Br.

22

22-24; Def. Opp. 8-9). However, the cited portions of *C.F.* and *J.C.* discuss *procedural* violations of the IDEA. (*See id.*). Both cases, as cited in Defendant's briefing, are inapplicable to the issue at hand.

For his part, Plaintiff relies exclusively on *Mr. & Mrs. A. ex rel. D.A.* v. *New York City Department of Education*, 769 F. Supp. 2d 403 (S.D.N.Y. 2011), to argue that the DOE denied D.L. a FAPE. In *Mr. & Mrs. A*, the DOE never provided the plaintiff with a school placement recommendation. *Id.* at 417-18. It was undisputed that DOE did not offer the plaintiff a placement at the CSE meeting. *Id.* at 417. After the meeting, no one from the DOE contacted the parents to discuss school placement. *Id.* at 417-18. Because DOE "never offered an interim or permanent placement" to the plaintiff, the court found that its failure to do so amounted to a denial of a FAPE. *See id.* at 416-18.

Here, in contrast, the CSE met and issued a FNR, which assigned D.L. to P.S. 138 at 117. *See H.L.,* 2016 WL 7429446, at *1. Afterwards, H.L. remained in contact with DOE: He met with Mr. Gaffney to discuss the FNR, learned of the need for a temporary placement for D.L. for the summer while construction finished, and toured an alternate site. *See id.* Plaintiff was aware that D.L. could begin at P.S. 138 at 117 in the fall, and the confusion between the parties concerned only the placement for the summer months.

Although under *M.O.*, Plaintiff was denied his *procedural* right to gather information about D.L.'s proposed summer placement in a timely fashion, the Court cannot find that DOE failed to place D.L. at all, as needed to support a substantive violation. The record indicates that had D.L. showed up at

P.S. 138 on the first day of the school year, he would have been placed at one of the three alternate schools. On this record, the Court does not find that D.L. was deprived of a school assignment for the 2011-2012 school year, and thus finds no substantive violation of the IDEA.

###    2.    The Rebecca School Was an Appropriate Placement for D.L. and Equitable Considerations Favor Plaintiff's Claim for Tuition Funding Limited to the Summer Placement Period

Having found that the DOE violated IDEA procedures as to D.L.'s summer placement, the Court turns to the remaining steps of the *Burlington-Carter* test. Generally, at this stage, courts evaluate the equities and ask whether the private school placement the Parents chose was appropriate to the student's needs. Here, the DOE "does not contest that Plaintiff has satisfied his burden with respect to those elements." (*See* Def. Br. 10 n.4). For that reason, the Court will not engage in extended discussion of either factor, but rather finds them satisfied.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is GRANTED IN PART and Defendant's motion for summary judgement is DENIED. Because Plaintiff's procedural right to meaningful participation in the IEP process was violated with respect to D.L.'s summer placement, the Court ORDERS Defendant to reimburse H.L. for the cost of tuition at the Rebecca School for July and August 2011.

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:      January 11, 2019
              New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge